HUMMEL & DOWNING COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 26283.  Promulgated November 19, 1953.

*Elden McFarland, Esq.*, for the petitioner.
*Arthur B. White, Esq.*, for the respondent.

234

■■■■■■■■■■■■■■■■■■■■

OPINION.

MURDOCK, *Judge:* The Court dismissed this proceeding because the basis for relief and the supporting facts presented at the trial had not been set forth in the Form 991 applications and were not shown to have been advanced to and considered by the Commissioner prior to his denial of the applications. *Hummel & Downing Co.*, 19 T. C. 61. The petitioner thereafter on November 12, 1952, filed a "Motion to reopen and permit petitioner to file documents submitted administratively." Its purpose was to show that in those documents it had presented to the Commissioner bases for relief and supporting facts similar to those presented to the Court. The parties were heard in oral arguments on that motion and thereafter were allowed to file briefs. The petitioner at no time has presented to the Court for its inspection copies of the documents which it seeks to introduce in evidence and has given the Court no satisfactory way of knowing whether or not any useful purpose would be served by opening the record to receive one or more of those documents. However, the Commissioner attached to his brief copies of the material portions of those documents and conceded that the Commissioner, before denying the applications for relief, had considered all of the documents to which he referred in his notice of denial of the applications for relief under section 722. He further conceded that the documents filed June 15, 1945, and June 18, 1947, supplementing the applications, were construed by the Commissioner as amending the original claim so that "to the extent, therefore, that petitioner's grounds for relief in the trial of this case were based on the contention of abnormally low selling prices caused by alleged overproduction of paper board products resulting from a temporary overexpansion of the kraft paper board industry, such grounds would reasonably appear to be within the scope of petitioner's administrative claims." He has no objection to the consideration by the Court, to that extent, of the petitioner's claim for relief in this case.

The petitioner in this proceeding is attempting to have this Court

consider a claim that its business and the business of the industry of which it was a part were depressed, during all of 1936 and until the latter part of 1937, by an abnormal increase in the cost of raw materials going into jute liner board resulting from a shortage of kraft pulp, which increase in costs of raw material was not accompanied by a commensurate increase in the selling prices of liner board due to the kraft industry anticipating expanded capacity. The Commissioner summarizes the petitioner's argument in this way: A shortage of kraft pulp capacity existed in 1936 and until late in 1937 causing the cost of kraft pulp to rise abnormally in those years; waste paper costs rose also; waste paper and kraft pulp are both used in making jute liner board; the increase in those costs was not accompanied by a commensurate rise in the selling prices of jute liner board due to the fact that prices of the competing kraft liner board did not rise; the cost of kraft pulp to manufacturers of kraft liner board did not increase, and the producers of that board deliberately refrained from increasing their prices because they anticipated increased kraft liner board production from increased kraft pulp capacity then being constructed and they wanted to hold their market; and low margins of profit on jute liner board caused all margins of profit on jute products to be abnormally low. Counsel for the Commissioner has consistently maintained that no such contention and no facts to support any such claim were presented to the Commissioner as a basis, or partial basis, for relief prior to his denial of the applications for relief and, since such matters are not within the scope of the original claim, even as broadened by the documents which the petitioner seeks to introduce into evidence, no such theory and no facts to support it should be considered by this Court. The petitioner has failed to show wherein the documents which it seeks to introduce into evidence presented any such basis or theory for relief with respect to the base period up to late 1937. It does not appear that the petitioner ever made the point before the Commissioner that the earnings of 1936 and the first half of 1937 were depressed due in any way to a shortage of kraft pulp capacity or production, or to an anticipated later overexpansion of kraft pulp capacity. The copies of the documents attached to the Commissioner's brief show that the contention of the petitioner contained therein was based on an alleged overcapacity or overproduction in the kraft paper board industry beginning in the latter part of 1937 which caused severe competition and abnormally low prices generally in the paper board industry, including the petitioner, during the latter part of 1937 and until the latter part of 1939. There is no reference in those documents to, coupled with reliance upon, the existence of an alleged shortage of kraft pulp in 1936 and early 1937, high kraft pulp prices resulting therefrom, any failure of prices to rise because of the

anticipation of the overexpansion of the kraft pulp industry, or any of the other factual matters upon which the petitioner relies in its briefs to establish constructive average income for 1936 and the first three-fourths of 1937.

The Court has been persuaded by the concessions of the Commissioner to vacate its decision dismissing the proceeding and to decide, on its merits, the issue of whether the selling prices of the petitioner for the latter part of 1937, all of 1938, and until the latter part of 1939 were abnormally low due to the temporary overexpansion of the kraft paper board industry. No good purpose would be served by opening the record to receive copies of the documents, in accordance with the petitioner's motion, since it does not appear that those documents presented to the Commissioner or caused him to consider the theory which the petitioner here argues with respect to 1936 and the early part of 1937.

The claim to be considered has no effect upon 1936 earnings, and although a part of it is that the overexpansion began in the latter part of 1937, nevertheless, the record does not justify any change in the actual earnings for that year. The question remains whether earnings for 1938 and 1939 are an inadequate standard of normal earnings because the business of the taxpayer or the business of the industry of which it was a part was depressed in those years by temporary economic circumstances unusual in the case of the taxpayer or the industry. The earnings of the taxpayer during 1938 and 1939 were unusually low and may fairly be regarded as an inadequate standard of normal earnings. The petitioner has attempted to show that the direct cause of those low earnings was a depression resulting from the temporary overexpansion of kraft pulp capacity or perhaps of the kraft paper board industry.

The Court has been unable to follow all of the various steps of the petitioner's argument to the conclusions which it seeks to reach. The argument, in general, is intricate and highly theoretical. The factual bases, dependent upon statistical data, are frequently too obscure to lend conviction. The petitioner has been too ready to draw a chain of favorable conclusions from charts or the statistical data from which they were prepared without demonstrating that the statistical data are directly in point and exclusive of other factors which may have entered into the situation. The Court must decide this case from the evidence as a whole and can not permit itself to be bound by the opinion testimony of witnesses where the record as a whole leaves it unconvinced as to the conclusions expressed by witnesses. The petitioner relies heavily upon the testimony of two witnesses. Neither one was in the employ of the petitioner during the base period or prior

thereto. One was a college graduate of the class of 1938 who had no first-hand knowledge during the base period of the petitioner or of any industry of which it was a part. His testimony is entirely theoretical, based upon his study of statistical data which apparently persuaded him more convincingly than it moves the Court. The other, an officer of the company which later purchased the stock of the petitioner, had been actively engaged in the paper board business since 1928. It does not appear that he was familiar with or had studied the activities of the petitioner sufficiently to know the principal reasons for the petitioner's low earnings for 1938 and 1939.

Section 722 (b) (2) refers to two situations—one, where the business of the taxpayer was depressed, and the other where an industry of which the taxpayer was a member was depressed, each because of temporary economic circumstances or events unusual in the case of the taxpayer or the industry. The petitioner does not carefully observe the distinction between these two bases for relief but moves, as suits its convenience in its argument, too readily from one to the other. The petitioner was primarily a box manufacturer although it also sold some chip board manufactured solely from waste paper. It does not refer to an industry composed exclusively of paper board box manufacturers but seeks to ally itself with the so-called jute industry or jute liner board industry. The solid and corrugated walled shipping containers manufactured by the petitioner, in which manufacture it used jute liner board, were sold in competition with similar containers in the construction of which kraft liner board was used. However, no reasonably close relationship appears from the record between the petitioner's prices for solid and corrugated walled containers and jute liner board industry prices.

The petitioner offered proof relating to overexpansion of kraft pulp capacity, but it also refers in argument to alleged overexpansion of kraft liner board capacity. Kraft pulp was used in making other important products in addition to liner board, but its significance here is only with relation to liner board, so that kraft production of and capacity for other products can only be misleading. The kraft industry could compete with the petitioner through the use of kraft liner board instead of jute liner board in solid and corrugated walled containers, but kraft liner board offered no competition, so far as the record shows, to the petitioner's business of the manufacture and sale of chip board or in the use of chip board in making cartons. The petitioner has not carefully observed these distinctions in presenting its case. It certainly is not apparent how the alleged overexpansion of kraft pulp capacity could affect the prices charged by the petitioner in 1938 and 1939 for chip board or cartons made out of that material.

The petitioner and others engaged in making jute liner board and containers of jute liner board were being subjected to serious competition from the growing kraft board industry ever since its inception, about 1926. That competition was permanent and not temporary. It had been increasing from the very beginning and gave indications of becoming more severe. The petitioner's prices were in general lower after 1928 than they had been formerly. The difficulty of segregating and measuring the effect upon the petitioner's 1937, 1938 and 1939 earnings of any temporary excess of expanded kraft pulp or kraft liner board capacity from late 1937 to late 1939 over the expanded production of or demand for those products during that same period is obvious.[1] Many other factors could have been and probably were affecting the petitioner's earnings during that same period.[2] The Court has studied the record in the light of the briefs but is not able to see even reasonably clearly that the low earnings of 1938 and 1939 are attributable to the circumstances to which the petitioner refers. However, the decision need not turn upon that point because the earnings for 1938 and 1939 would have to be constructed to exceed a total of $294,000 in order to entitle the petitioner to a greater excess profits credit based on income under section 722 for any year material hereto than has been granted to it under the invested capital method of section 714 and the Court is not at all convinced that a fair and just amount to represent the normal earnings for those years to be used in computing a constructive average base period net income would exceed that amount.

The petitioner has proposed various methods of constructing a fair and just amount to represent its normal earnings for the base period years and by each method arrives at total earnings of at least $479,278 for 1938 and 1939 and average earnings for the 4 base period years of at least $276,696. The petitioner, in making those computations, has made too many assumptions too favorable to itself. It does not appear from the record that the total earnings for 1938 and 1939 could fairly and justly be constructed to exceed $294,000 and it follows that the petitioner is not entitled to any relief under section 722 based upon the claim which it presented to the Commissioner of Internal Revenue.

Reviewed by the Special Division.

*Decision will be entered for the respondent.*

---

[1] The alleged excess kraft pulp capacity at the beginning of 1938 was 30.05 per cent of production for that year while similar percentages computed for several prior years were higher. In one of those prior years the petitioner sustained a loss but in others it had reasonably good earnings.

[2] A 1938 report of the president of the petitioner gave as the principal causes of low 1937 profits antiquated equipment and increased cost of labor and mechanical supplies.